IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

MARGARET KUEBLER                                                                    PLAINTIFF

VS.                                                                                 No. 3:05CV125-D-A

UNION PLANTERS MORTGAGE INC., ET. AL.                                               DEFENDANTS

OPINION GRANTING MOTION TO DISMISS

Presently pending before the Court is the Defendants' consolidated motion to dismiss. Upon due consideration, the Court finds that the motion shall be granted.

*A. Factual Background*

The Plaintiff initiated this action alleging violations of the Fair Debt Collection Act and various other state law claims arising out a dispute regarding Plaintiff's mortgage payments and the Defendants' initiation of foreclosure proceedings.

On March 6, 1997, Emilie Kuebler, the Plaintiff's mother, obtained a mortgage loan with Magnolia Federal Bank for Savings. This loan was later refinanced in November 1998. Magnolia Federal Bank for Savings was later purchased by Union Planters Bank. Regions Bank is the successor in interest to Regions Mortgage, Inc., Union Planters Mortgage, Inc., and Union Planters PMAC, Inc. In connection with the execution of loan documents, Emilie Kuebler signed several documents including an Alternative Dispute Resolution Agreement. This agreement included a provision to arbitrate disputes. That agreement was signed on November 25, 1998, by Emilie Kuebler. In addition, Emilie Kuebler signed The Special Provision Rider to the Deed of Trust and the Note which both contained arbitration agreements.

In April 1999, Emilie Kuebler died and her daughter, Plaintiff Margaret Kuebler, became the

administrator of her estate. The Plaintiff alleges that the Defendants have participated in a series of calculated accounting irregularities and improperly imposed late fees and other fees on her mortgage account. The Plaintiff alleges that despite making payments on time the Defendants have issued late fee charges and have threatened to foreclose on the loan. The Plaintiff claims damages for extreme emotional distress. The Plaintiff alleges that she has tried to solve the dispute with the Defendants, but was left with no other alternative, but litigation.

In their current motion, the Defendants seek to have this Court dismiss this action and issue an order compelling the Plaintiff to arbitrate her claims. The Plaintiff claims that the arbitration agreement is invalid on several grounds. First, the Plaintiff states that the agreement was not signed by the bank. Second, the Plaintiff states that she was not a party to the arbitration agreement and her claims are not governed by it. Finally, the Plaintiff argues that her claims are tort claims and are not the subject matter of the arbitration claim.

*B. Discussion*

<u>1. Standard to Compel Arbitration</u>

The Federal Arbitration Act (FAA), 9 U.S.C. §§ 1 - 16, provides that a written arbitration provision contained in a contract involving commerce is valid, irrevocable, and enforceable. 9 U.S.C. § 2. The FAA expresses a strong national policy in favor of arbitration, and any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. <u>Southland Corp. v. Keating</u>, 465 U.S. 1, 10, 105 S. Ct. 852, 857, 79 L. Ed. 2d 1 (1983); <u>Mouton v. Metropolitan Life Ins. Co.</u>, 147 F.3d 453, 456 (5th Cir. 1998).

The Fifth Circuit has directed that courts are to perform a two-step inquiry to determine whether parties should be compelled to arbitrate a dispute. <u>OPE Int'l LP v. Chet Morrison Contractors, Inc.</u>, 258 F.3d 443, 445 (5th Cir. 2001). First, the court must determine whether the

parties agreed to arbitrate the dispute.  OPE Int'l, 258 F.3d at 445.  In conducting this inquiry, the court must determine whether a valid agreement to arbitrate exists, and whether the dispute in question falls within the scope of that arbitration agreement.  Id.; Pennzoil Exploration and Prod. Co. v. Ramco Energy Ltd., 139 F.3d 1061, 1065 (5th Cir. 1998).  Once the court finds that the parties agreed to arbitrate the claims, it must consider whether any federal statute or policy renders the claims nonarbitrable.  OPE Int'l, 258 F.3d at 446.

### 2.  Agreement to Arbitrate

The parties do not dispute that the Plaintiff signed documents containing an arbitration clause.  Nor do the parties dispute that the Plaintiff received a document entitled "Alternative Dispute Resolution Agreement" ("ADRA"), a document entitled the "Note," and a document entitled "Special Provisions Rider 1" ("Rider").  The Plaintiff also does not dispute that her mother, Emilie Kuebler signed those documents.

The ADRA states, "This agreement provides an alternative method of settling most disputes as authorized by Congress in the Federal Arbitration Act, Title 9 U.S.C. §§ 1 et seq.  INSTEAD OF GOING TO COURT, both of us would submit to a process of good faith negotiation, followed by non-binding mediation conducted by an independent, professionally trained mediator, and if necessary followed by BINDING ARBITRATION."  The ADRA further states that a borrower is defined as, " . . . each person who receives any benefit or service related to any extension of credit by the Lender and includes without limitation Borrower's heirs, successors, assigns, persons assuming the debt and/or purchasing collateral securing the debt, and may include all persons claiming by or through Borrower."  The ADRA declares that the parties " . . . intend for this agreement to cover the broadest range of disputes and legal issues that may be arbitrated under federal law."  The Plaintiff's mother signed the ADRA.  Union Planters Bank, National Association

is printed above the signature line, but the Bank representative failed to sign that document.

The Rider and the Note's arbitration clauses contain the exact same language. That language states:

> Any controversy or claim arising out of or relating to this document or any transactions, events or contracts in any way relating to or arising from this document, shall be settled by arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association (AAA) and judgment upon the award rendered by the arbitrator may be entered in any Court having jurisdiction thereof. If a separate Alternative Dispute Resolution Agreement and/or Arbitration Agreement now or hereafter exists between any of the parties to this document, then all parties agree to be bound by the separate Alternative Dispute Resolution Agreement or Arbitration Agreement which shall totally supercede this arbitration provision. If the separate agreement is determined by any reason to be invalid or unenforceable, then this arbitration provision may be enforced by any party.

The Plaintiff's mother as well as a Union Planters representative signed this document.

As for the first step in the court's analysis, the Plaintiff asserts that the arbitration clause is unenforceable because: (I) the Defendant Union Planters PMAC failed to sign the ADRA; (ii) the Plaintiff was not a party to the ADRA, the Rider, or the Note and her claims are personal and tort in nature, and (iii) the Agreement is unconscionable.

For the following reasons, the court finds that the Plaintiff's arguments are misplaced

### 3. Non-Signatory Status

The Plaintiff's argument that the Bank's failure to sign the ADRA renders that document invalid is a novel issue of law. Most disputes concerning signatures on an arbitration agreement are those in which the party denying the existance of an arbitration agreement did not sign such a document. Here, the party seeking to enforce the ADRA did not sign that document. The Plaintiff's mother signed the ADRA, but Union Planters did not. The Court now turns to Fifth Circuit and Mississippi law to make its ruling.

Arbitration agreements are a matter of contract between the parties. <u>Washington Mutual</u>

Finance Group, LLC v. Bailey, 334 F.3d 260, 264 (5th Cir. 2004). Accordingly, the question of whether the parties formed a valid agreement to arbitrate is a matter governed by the principles of state contract law. May v. Higbee Co., 372 F.3d 757, 764, (5th Cir. 2004). The Court finds that the parties originally formed this contract in the State of Mississippi. The Plaintiff currently resides in Mississippi and her mother was a resident of Mississippi prior to her death. In addition, the original mortgage loan was made with a Mississippi bank. The current Defendants have offices and branches in Mississippi and conduct business in this state. Absent the existance of a contrary choice of law clause, Mississippi contract law shall apply to this dispute.

The Plaintiff offers the Court a plethora of law from other jurisdictions stating that a contract or arbitration agreement is not valid without a signature. In addition, the Plaintiff offers Mississippi caselaw stating that a signature is a method of showing assent to an agreement. Mississippi courts have long held that a party's conduct may manifest its assent to an agreement. May v. Higbee Co., 372 F.3d at 764. see Edwards v. Wurster Oil Co., 688 So. 2d 772, 775 (Miss. 1997); Misso v. National Bank of Commerce, Memphis, Tenn., 95 So. 2d 124, 126 (Miss. 1957) (holding that an offer or acceptance may be expressed by acts as well as words). The Mississippi Supreme Court has held that any definite or unequivocal course of conduct showing that a party has assented to a contract is binding on him just as his signature would be. Edwards, 688 So. 2d at 775. see Fanning v. C.I.T. Corp., 192 So. 41 (Miss. 1939); Old Equity Life Ins. Co. v. Jones, 217 So. 2d 648, 650 (Miss. 1969).

It is telling that the Defendants signed every other document associated with the subject loan except for the ADRA. In addition, the Defendants negotiated in accordance with the ADRA. Then, the Defendants engaged in mediation proceedings in accordance with the terms of the ADRA. Thus, the Court finds that the Defendants ratified the agreement by their actions. In accordance with

Mississippi law, these actions are sufficient conduct of assent, and the Defendants did indeed bind themselves to the agreement. Thus, the Court finds that the parties did intend to arbitrate in accordance with the ADRA. The Court notes that the Fifth Circuit has previously allowed non-signatories to bind signatories to arbitration agreements. See Grigson v. Creative Artists Agency, LLC, 210 F.3d 524, 527 (5th Cir. 2000). The Court sees no reason why the Fifth Circuit would not expand its holding in Grigson to apply to this scenario.

### 4. Scope of the Agreement

Turning to the question of whether this dispute falls within the scope of the arbitration agreement, the Plaintiff's complaint alleges damages and seeks monetary relief for, inter alia, fraud, deceit, misrepresentation, fraudulent inducement, conversion and violations of the Fair Debt Collection Act and the Real Estate Settlement Procedures Act. All of these claims arise out of loan and mortgage transactions between the Plaintiff and Defendants; the same transactions in which the Plaintiff's mother signed the arbitration agreements. The language of the agreements is sufficiently broad so as to encompass all of the Plaintiff's claims. Specifically, the agreements require arbitration of " the broadest range of disputes and legal issues. Borrower and Lender agree that any questions as to the scope of this Agreement shall be determined by the arbitrator..." Such language has repeatedly been held to be broad enough to "embrace all disputes between the parties having a significant relationship to the contract." Pennzoil Exploration & Prod. Co. v. Ramco Energy Ltd., 139 F.3d 1061, 1067 (5th Cir. 1998); Hornbeck Offshore Corp. v. Coastal Carriers Corp., 981 F.2d 752, 755 (5th Cir. 1993) ("arbitration clauses containing the 'any dispute' language . . . are of the broad type" and absent allegations of fraud in the inducement, arbitration must proceed when an arbitration clause on its face appears broad enough to encompass the party's claims.). There is no doubt that the Plaintiff's claims not only have a significant relationship to the loan transactions but

also arise directly from this debtor creditor relationship. In addition, the ADRA specifically states that the Plaintiff's heirs would be bound by that agreement. Therefore, the entire dispute falls squarely within the scope of the arbitration agreements.

### 5. Unconscionability

The Plaintiff contends that the arbitration agreement is unenforceable on grounds of unconscionability. In determining whether an agreement to arbitrate is unenforceable due to unconscionability, the Court refers to state law. <u>Doctor's Assocs., Inc. v. Casarotto</u>, 517 U.S. 681, 686-87, 166 S. Ct. 1652, 1656, 134 L. Ed. 2d 902 (1996).

Under Mississippi law, a court may refuse to enforce a contract, or any clause of a contract, that is found to have been unconscionable when made. <u>See</u>, Miss. Code Ann. § 75-2-302 (1972). Mississippi law defines an unconscionable contract as "one such as no man in his senses and not under a delusion would make on the one hand, and no honest and fair man would accept on the other." <u>Entergy Miss., Inc. v. Burdette Gin Co.</u>, 726 So.2d 1202, 1207 (Miss. 1998). Under Mississippi law, there are two types of unconscionability: procedural and substantive. <u>York v. Georgia-Pacific Corp.</u>, 585 F. Supp. 1265, 1278 (N.D. Miss. 1984).

a. Procedural Unconscionability

A party may establish procedural unconscionability if he proves "a lack of knowledge, lack of voluntariness, inconspicuous print, the use of complex legalistic language, disparity in sophistication or bargaining power of the parties and/or lack of opportunity to study the contract and inquire about the contract terms." <u>Id.</u> at 1278.

The Plaintiff asserts that the arbitration clause in the Rider was buried in a large volume of documents. First, the Court has found that the ADRA is a valid arbitration agreement. The

arbitration provision in the Rider and Note specifically declares that the ADRA overrides its arbitration clause. In addition, the Court finds that the arbitration clause in the Rider and Note is conspicuous. Thus, the Court finds no merit in the Plaintiff's unconscionability defense.

Therefore, the Plaintiff has failed to establish that the agreement is procedurally unconscionable.

    b. Substantive Unconscionability

A party may prove substantive unconscionability if he proves that the terms of the arbitration clause were oppressive. York, 585 F. Supp. at 1278. The test is "whether, in light of the commercial background and commercial needs of the particular trade or case, the clause is so one-sided that it is unconscionable under the circumstances existing at the time the contract was made." Id. at 1279. Furthermore, "a contract found to be merely improvident will supply no basis for relief." Id.

The Plaintiff has not even made an argument for substantive unconscionaiblity. The party resisting arbitration has the burden of demonstrating why arbitration is not appropriate. Green Tree Fin. Corp. v. Randolf, 531 U.S. 79, 81, 121 S. Ct. 513, 517, 148 L. Ed. 2d 373 (2000). This the Plaintiff has failed to do. The Plaintiff's unsubstantiated conclusions are insufficient to render the arbitration agreement unenforceable. Thus, Plaintiff has failed to establish that the parties' agreements are unenforceable on grounds of procedural or substantive unconscionability.

### 6.   Conclusion

Thus, the court finds that the parties agreed to arbitrate the Plaintiff's claims; therefore, the first step in the court's analysis is complete. The ADRA's arbitration clause is unambiguous, sufficiently broad to cover the Plaintiff's claims, and susceptible to only one interpretation - that the parties intended to settle, through arbitration, the claims the Plaintiff has raised. None of the

Plaintiff's claims fall outside the scope of the arbitration clause.

As for the second step in the court's analysis, the Plaintiff does not argue that the claims are nonarbitrable for any reasons other than those previously addressed, and the court finds that no federal statute or policy renders the Plaintiff's claims nonarbitrable. As such, the court finds that the Plaintiff's claims should be submitted to arbitration in accordance with the terms of the parties' Alternative Dispute Resolution Agreement.

*C. Dismissal of the Plaintiff's Claims*

Finally, the court finds that this cause should be dismissed without prejudice. Section 3 of the Federal Arbitration Act provides that, upon a showing that the issues involved in an action are properly referable to arbitration, the court "shall . . . stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. The Fifth Circuit has ruled, however, that Section 3 of the FAA does not limit dismissal of a case in the proper circumstances and that if all of the issues raised in the district court are arbitrable, dismissal of the case is proper. See Alford v. Dean Witter Reynolds, Inc., 975 F.2d 1161, 1164 (5th Cir. 1992) (holding that retaining jurisdiction and staying an action "serve[s] no purpose" when all issues are arbitrable); Fedmet Corp. v. M/V Buyalyk, 194 F.3d 674, 678 (5th Cir. 1999).

As was the case in Alford, all of the claims in this case are arbitrable. As such, the Plaintiff's claims shall be dismissed without prejudice.

A separate order in accordance with this opinion shall issue this day.

This the 15th day of June 2006.

/s/ Glen H. Davidson
Chief Judge